## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 96-CA-00271-SCT

*LLOYD EARL TINNON AND SHIRLEY TINNON*

*v.*

*FRANK G. MARTIN, M.D., WILLIAM L. STRIEGEL,*
*M.D., J. HOLTZ, CRNA AND JAMES CORDER, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/19/96 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | L. CHRISTOPHER BREARD |
| ATTORNEYS FOR APPELLEES: | ROGER T. CLARK |
| | R. E. PARKER, JR. |
| | STEVEN PERESICH |
| | JAMES L. JONES |
| | C. VICTOR WELSH, III |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 6/18/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/9/98 |

**BEFORE PITTMAN, P.J., McRAE AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This appeal comes before this Court from the Circuit Court of Harrison County, Mississippi, Honorable Jerry Terry, Sr., presiding. The case involves the dismissal of Shirley and Lloyd Earl Tinnon's medical malpractice claim, filed June 13, 1994, against William L. Striegal, M.D., J. Holtz, CRNA, James Corder, M.D., Frank G. Martin, M.D., Surgical Clinic of Biloxi, P.A., Ocean Springs Hospital, and Does 1 through 5 (all referred hereinafter as Defendants). The allegations in the suit arose from the treatment received by Lloyd Tinnon while he was a patient at Ocean Springs Hospital in March, 1993.

¶2. Dr. Martin filed a Motion to Compel Waiver of the Medical Privilege and Permit Ex Parte Conferences with Treating Physicians. The lower court entered an order allowing ex parte

conferences on June 16, 1995, waiving the privilege only as to relevant information, relying on Miss. Code Ann. § 13-1-21(4). The order provided that disclosure should not be limited by the patient or his attorney as to time, place or method of disclosure and that any attempt to do so would be in violation of the order.

¶3. Subsequent to the entry of this order, Tinnon's counsel wrote a letter on July 6, 1995, to Dr. Gary, who had treated Tinnon during his stay at Ocean Springs Hospital. The letter enclosed a copy of the complaint, the lower court order, and an outline of what Tinnon's counsel saw as the doctor's options in disclosing information to the defense. The letter recommended to the doctor that he might want to obtain legal advice and reminded him that the medical privilege applied to any non-relevant information the doctor might possess.

¶4. After receiving the letter from Tinnon's counsel, Dr. Gary refused to talk to any defense attorneys without Tinnon's counsel being present or except pursuant to a deposition where all the parties would be present. The named defendants filed a motion for contempt for violation of the previous court order waiving Tinnon's medical privilege. At the contempt hearing, Tinnon's counsel admitted to sending the letter but denied that it violated the court order. On February 19, 1996, Judge Terry entered a judgment of dismissal under M.R.C.P. 37(b)(2)(C), finding that the letter was in direct contempt of the court's order. This appeal followed.

¶5. On April 18, 1996, this Court handed down its opinion in *Scott v. Flynt*, 704 So.2d 998 (Miss. 1996). Tinnon filed a M.R.C.P. 60(b) motion on April 22, 1996, asking the lower court to reconsider its decision to dismiss the suit. However, a hearing on the motion was postponed pending this Court's ruling on the motion for rehearing in *Scott v. Flynt*. This Court denied the motion for rehearing in *Scott v. Flynt* on December 8, 1997.

¶6. Tinnon has raised two issues on appeal for this Court to consider. Because of the posture of his claims on appeal, they are restated as follows:

> **I. WHETHER TINNON IS PRECLUDED FROM COLLATERALLY ATTACKING THE LOWER COURT'S ORDER SUBSEQUENT TO THE ALLEGED VIOLATION OF THE ORDER.**

> **II. WHETHER THE LOWER COURT PROPERLY FOUND WITHIN THE SCOPE OF ITS DISCRETION THE LETTER TO BE A VIOLATION OF THE COURT ORDER SO AS TO APPLY THE SANCTION OF DISMISSAL.**

¶7. Although they did not cross-appeal, the Defendants have raised an additional issue regarding the constitutionality of M.R.E. 503(f) and the Court's ruling in *Scott v. Flynt*.

> **III. WHETHER M.R.E. 503(f) IS VIOLATIVE OF THE DEFENDANTS' CONSTITUTIONAL RIGHTS.**

¶8. We find that the lower court should not have imposed the ultimate sanction of dismissal in the case sub judice, as the letter was not a violation of the court's order. The learned trial judge made the decision he thought best at the time, but review and subsequent events reflect a new perspective on this issue.

¶9. Therefore, we reverse and remand for a new trial. Because M.R.E. 503(f) does not violate the Defendants' constitutional rights, all further proceedings should be in accordance with this Court's decision in *Scott v. Flynt*, 704 So.2d 998 (Miss. 1996).

<u>**STATEMENT OF THE FACTS**</u>

¶10. Lloyd and Shirley Tinnon filed this malpractice action on June 13, 1994, alleging Mr. Tinnon aspirated vomit into his lungs during the induction of anesthesia and/or during surgery due to the failure of the physicians, anesthesiologist, CRNA and hospital employees to meet the required standard of care pre-operatively in a patient suffering from a small bowel obstruction, to prevent aspiration. The defendants timely answered the complaint.

¶11. On April 5, 1995, Dr. Martin filed a Motion to Compel Waiver of Medical Privilege Permitting Ex Parte Conferences with Treating Physicians. The court was asked to adjudicate the privilege, if any, waived between Tinnon and all medical providers and permitting medical providers to fully disclose to the defendant or his counsel, and to freely discuss with them, all information which they possess about the medical condition of Tinnon. Tinnon responded that the waiver under M.R.E. 503 permitted disclosure of relevant information but opposed the waiver and allowed ex parte communication. Tinnon argued that ex parte conferences could irreparably harm his case by allowing the Defendants to delve into areas privileged and not waived and by giving defendants the opportunity to coerce, directly or indirectly, the physicians into viewing the facts in a light most favorable to the Defendants driving a wedge between the physician and patient and poisoning the relationship. Tinnon also claimed that M.R.E. 503(f) speaks specifically of ex parte contacts as it applies to medical malpractice cases. Finally, Tinnon asked for an interlocutory appeal in the event that the court should decide that ex parte contact was appropriate.

¶12. The trial court entered an order waiving the medical privilege of Tinnon on June 16, 1995. This order directed medical providers with any medical information relevant to the allegations upon which the claim is based to disclose such information at the request of the Defendants or their attorneys without a further waiver by Tinnon. The order did not address the request for interlocutory appeal. However, the lower court instructed that the disclosure of relevant information was not to be limited by Tinnon or his legal representatives as to time, place, or method of disclosure, and any attempt to so limit such disclosure would be in direct violation of the order.

¶13. Subsequent to the entry of the trial judge's order, counsel for Tinnon wrote a letter to Dr. Gary on July 6, 1995. The letter reminded Dr. Gary that there was a physician-patient privilege. The letter stated that the order by the trial court waived the privilege as it pertained to relevant information in the case at bar and noted there might be a question as to what was relevant. The letter continued:

> The judge has also impliedly, if not specifically, allowed the defense attorneys to have ex parte private meetings with you. The court does not require you to meet in private with defense counsel. A problem may arise in your determination of what is "relevant to the allegations" in any of these private meetings.

> You are therefore left with several choices. You can (1) attempt to, at your own risk, make a determination of what is relevant to the allegations on your own and risk violating the unwaived privilege; (2) you can require that any information conferences be done in the presence of

plaintiff's counsel; and (3) you can request that any conferences be held by way of a formal deposition. Regardless you may want to contact your own private counsel to make sure that you are not at risk of violating your legal and ethical responsibilities to Mr. Tinnon in any ex parte contact with defense counsel, especially since your [sic] are not in the jurisdiction of this state.

While Mr. Tinnon has nothing to hide in this litigation, he does want to be assured that the remaining physician/patient privilege between you and Mr. Tinnon is not harmed. Regardless of this litigation, we are most concerned that trust and confidence be maintained between you and Mr. Tinnon since trust is an important factor in any patient's health care plan.

Judge Terry has made it clear that we are not allowed to prohibit you from giving the defense relevant information outside of my presence. However, I do believe I have a duty to my client to advise you that we are concerned about non-relevant information inadvertently being obtained by the defense and later used against you and/or my client at trial.

The letter also contained a copy of the order and the complaint.

¶14. Discovery continued during August and September of 1995, including the filing of motions to compel discovery and a motion for protective order preventing deposition by video of a Dr. Martin. The motion for protective order was argued on October 2, 1995. Due to a scheduling conflict, Tinnon's counsel, Mr. Chris Breard, was unable to attend the arguments and had substitute counsel standing in for him. During defense counsel's arguments against the video taping of Dr. Martin's deposition he interjected:

The other point is, is that in trying to prepare our defense we have tried to find out ourselves what it is the plaintiffs may be complaining about in this case and we have tried to have interviews with the treating physicians, particularly Dr. Gary, the pulmonologist,. . . .

And, Your honor, we had a motion about five months ago where Your Honor entered this order waiving privilege, which is your standard order and which also says that we're permitted to have ex parte meetings with physicians like Dr. Gary who is now out in Texas. He's moved from this area. And your order also says that those efforts should not be limited by the patient or his counsel or there should be any interference, is our position what your order says.

. . . Mr. Breard writes a letter to Dr. Gary, and now Dr. Gary feels threatened and will not meet with us ex parte.

. . . .

Now I want to just reiterate to the Court that we're not trying to obstruct discovery. We will make Dr. Martin available for a discovery deposition. . . . But under the circumstances of us being pretty much handcuffed, I mean, Your Honor gave us the order allowing us to do ex parte meetings.

But now my paralegals have called out to Dr. Gary's office. . .and a clerk in his office. . .said that she had spoken to Dr. Gary about our wanting to meet with him, that Dr. Gary had gotten that letter from Chris Breard where this clerk said that from her reading the letter it indicated

that Mr. Breard adamantly did not want Dr. Gary to meet with any of the defendants' counsel without him being present.

I provided a letter to the Court, and, Judge, you can draw your own conclusions in that. But whether the letter is threatening or not, Mr. Breard had accomplished his purpose. And I think that is to prevent us from meeting ex parte with that doctor.

. . . .

In my opinion what needs to be argued today is, one, is how do we get this discovery out of the plaintiffs; two, how do we deal with our ability to meet ex parte with the physicians in order to investigate our case that Your Honor gave us permission to do. . .

¶15. Substitute counsel for Mr. Breard argued that the only question before the lower court at that time was whether the Defendant's deposition could be videotaped. The lower court ruled that there would be no deposition until the motion to compel was heard. The lower court gave notice that it wanted Tinnon's counsel, Mr. Breard, to be present at the time the motion to compel was heard so that he might give a reason as to why he should not be held in direct violation of the court order granting ex parte contacts. The judge admonished that if counsel was unable to give a reasonable explanation why he was not in violation of the order he would not be able to use Dr. Gary as a witness. This concluded the hearing.

¶16. On January 9, 1996, the Defendants filed a joint motion of dismissal pursuant to M.R.C.P. 37(b)(2)(C) and 41(b) for the "willful, contumacious action of Plaintiff's Counsel" in writing a letter to a treating physician of Plaintiff Lloyd Earl Tinnon. Attached to the motion as an exhibit was the letter written on July 6, 1995. The Defendants claimed that Tinnon's counsel violated the order waiving the medical privilege by writing the letter and that they were prejudiced because the doctor refused to talk with the Defendants' counsel without Tinnon's counsel present or except pursuant to a deposition where all parties would be present.

¶17. Tinnon responded on February 14, 1996, denying that the letter was in violation of the lower court's order or that there was any prejudice to the Defendants. The motion was argued on February 16, 1996. The Defendants complained that Dr. Gary was "chilled" when he received the "threatening letter" and would not meet with them ex parte. They argued that the only appropriate sanction would be to dismiss the lawsuit. The Defendants argued that otherwise this type of conduct by Tinnon's counsel was going to continue, and as a result the physicians were going to "coil up and not talk" to them.

¶18. Tinnon's counsel responded by stating he did not know what opinions or information Dr. Gary might have. He stated that he felt he had a right to explain the order to Dr. Gary, especially as it related to the waiver being restricted to relevant information.

¶19. The trial judge stated:

[i]f [a physician] is advanced as an expert he's going to be asked does he have an opinion based upon his experience, his education as to whether or not there is a causal relationship between X and Y. . . . If he hasn't got sense enough to understand what is relevant to the proceedings, that

language, how is he going to understand whether or not there is a causal relationship?

The court then went on to state, "I'm dealing right now with the matter of basically contempt for violating a Court order." Tinnon's counsel reiterated that he did not feel that the letter was in violation of the order or that it was a sanctionable action. The court responded that counsel had the option of appealing the order of the court. The court further stated that if the plaintiff did not appeal, the order becomes the law of the case and any breach is contemptuous.

¶20. Tinnon's counsel suggested that lesser sanctions were available if the court found that there had indeed been a violation of the order. The trial judge rejected these other possibilities stating "the skunk is already in the jury box." However, the court previously had indicated that if the order was found to have been violated Dr. Gary's testimony could not be used by Tinnon.

¶21. The trial court found the order had been violated and entered the following order.

> The violation of this Court order was a direct violation, a direct contempt of the order, and was in nobody's hands other than plaintiff's counsel. It was either a willful disregard of the Court order, or to say the least, it was the most reckless disregard that I have ever seen.

> I know that a lot of lawyers disagree with this particular order, but all of those lawyers that disagree with it have simply taken exception to the order, I suppose biding their time for an appeal, but I've never had one to directly violate it by writing a letter such as this. I don't see how it could be deemed anything other than a threat to the doctor. It accomplished its purpose. That had to be the purpose, otherwise it wouldn't have been written.

> I don't know how to rectify a matter such as this. I don't know of any other sanction that can be imposed that would rectify the matter. As far as the order itself, there was some thought put into the matter as to whether these orders should be entered. We all recognize that the Supreme Court in its rule making power has accepted [sic] ex parte hearings from the waiver in ordinary tort actions. But this order simply follows the statute in medical malpractice cases. And that's not been ruled on. Apparently it's been before the Supreme Court for some period of time and for some reason or another they can't make up their minds.

> The violation of the order that was entered in this case waiving the medical privilege and the directive that was added to that order that any violations of the waiver or attempts to limit it in any way would be treated as contempt, that was noticed to everyone. No appeal having been taken and this correspondence having been directed, the Court is satisfied that Mr. Breard is in contempt of court for taking the action that he did and that this Court is going to finally dismiss Mr. and Ms. Tinnon's case for the sanctions for violating the order on the discovery under Rule 37(b)(2)(C) I believe it is.

> And as you say, you can appeal that now. But this case is dismissed. Maybe the Supreme Court will now have the desire to rule and tell us whether the waiver is waived or it's not waived. That's it.

> . . . .

> . . .I'm cautioning you, this is a standard order that is being entered in all medical malpractice

cases unless the lawyers get to [sic] together and agree to something differently. If I have to continue to hear these matters, unless there's some exception shown as to why some exception to that order should be entered, I'm going to assess sanctions by way of attorney's fees for me having to sit here and listen to it.

¶22. The judgment of dismissal was entered February 19, 1996, and incorporated the above findings by the trial court. The dismissal order stated that the court had found Tinnon's counsel to be in direct contempt of the court's order waiving medical privilege as a result of the July 6, 1995, letter to Dr. Gary. The court expressed in the order that there was no lesser sanction which could rectify or alleviate the consequences of the violation of the court's order other than dismissal as a sanction according to M.R.C.P. 37(b)(2)(C).

¶23. Tinnon gave notice of appeal on March 12, 1996. Prior to the record being transmitted to the Supreme Court of Mississippi, *Scott v. Flynt*, 704 So.2d 998 (Miss. 1996), was handed down on April 18, 1996. On April 22, 1996, Tinnon filed a motion to reconsider and vacate the trial court's order dismissing his case.

¶24. The Defendants responded that the lower court lacked jurisdiction; reconsideration would be premature because ex parte communications remains unresolved as a matter of federal constitutional law; and finally because even if M.R.E. 503(f) applies in medical malpractice cases, it did not change the fact that Tinnon had violated the court order. On April 25, 1996, one of the attorneys for the Defendants wrote to the trial judge to inform that a motion for rehearing had been filed in *Scott v. Flynt*.

¶25. On May 6, 1996, Tinnon's counsel requested that the motion to vacate should be continued until such time as the "Supreme Court decides to grant or deny defendant's motion for reconsideration in *Scott v. Flynt* and for the mandate to issue." The record before the Court does not contain a response from the trial court or reflect that any action was taken as a result of Tinnon's request. The motion for rehearing in *Scott v. Flynt* was denied on December 8, 1997. The mandate was issued on December 15, 1997.

## DISCUSSION OF THE ISSUES

**I. WHETHER TINNON IS PRECLUDED FROM COLLATERALLY ATTACKING THE LOWER COURT'S ORDER SUBSEQUENT TO THE ALLEGED VIOLATION OF THE ORDER.**

**II. WHETHER THE LOWER COURT PROPERLY FOUND WITHIN THE SCOPE OF ITS DISCRETION THE LETTER TO BE A VIOLATION OF THE COURT ORDER SO AS TO APPLY THE SANCTION OF DISMISSAL.**

¶26. The Defendants made a motion to compel waiver of the medical privilege permitting ex parte conferences with treating physicians. Tinnon responded to this motion and concluded the response with a request that the trial court, if it granted the motion to compel waiver of the medical privilege, grant Tinnon an interlocutory appeal as to this question of law. The record is void of any ruling on the specific request for interlocutory appeal.

¶27. The lower court entered its order permitting ex parte contacts by the Defendants and their attorneys with any health care professional who might have relevant information to Tinnon's medical malpractice case. Part of that order prohibited Tinnon or his legal representative from limiting the disclosure as to time, place, or method of disclosure. The order concluded that any attempt to so limit disclosure would be deemed a direct violation of the order.

¶28. As described earlier, Tinnon's attorney wrote Dr. Gary a letter that was interpreted by the trial court as a violation of the order waiving the medical privilege. The trial court then dismissed Tinnon's case under M.R.C.P. 37(b) as a result of the violation of the court order.

¶29. Tinnon argues on appeal that this Court should review the underlying order to determine if the lower court was correct in waiving the medical privilege allowing ex parte contacts. The Defendants state that Mississippi case law prohibits reviewing the lower court order where the alleged contempt consisted of failure to comply with the terms of a court order. *Ladner v. Ladner*, 206 So. 2d 620, 623 (Miss. 1968).

¶30. Where the Mississippi Rules of Civil Procedure are the same as the Federal Rules, this Court has looked to federal decisions interpreting those rules. *See **Bruce v. Bruce***, 587 So. 2d 898, 903 (Miss. 1991); ***White v. White***, 509 So. 2d 205, 208 (Miss. 1987); ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 364 (Miss. 1983). "It is generally recognized that a Rule 37(b) sanction makes the prior discovery order final and therefore subject to review on appeal." ***Familias Unidas v. Briscoe***, 544 F.2d 182, 191 (5th Cir. 1976); *See **Hastings v. North E. Indep. Sch. Dist.***, 615 F.2d 628, 631 (5th Cir. 1980). "If an appeal lies from a contempt order or other sanction, the appellate court will consider whether the discovery order that led to the sanction was proper." 8 Charles A. Wright, et al., Federal Practice and Procedure § 2006, (2nd ed. 1994).

¶31. The Defendants contend that the inquiry by the appellate court is much more limited.

> In contempt proceedings to determine whether or not a party has deliberately and intentionally violated an order of the trial court, the inquiry is limited to the issues as to whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court. In a case where the alleged contempt consisted of the failure to comply the terms of the court order or decree, an inquiry into the merits of the order or decree will not be permitted.

*Ladner*, 206 So. 2d at 623.

¶32. The Defendants point out that lawyers should be bound by the existing law and controlling orders of the court as it exists at the time of their actions; otherwise, courts would have no authority at all. They argue that attorneys and parties alike would be constantly violating orders, rules, or laws they do not agree with and then appealing the decision of the lower court to get the law changed so that they could say "see, I did nothing wrong; the law was wrong."

¶33. In *Ladner*, this Court noted Judge Griffith's writings in Mississippi Chancery Practice § 668 (2d ed. 1950):

. . .It is only where the order or decree is void, or where there was absolutely no jurisdiction under any circumstances, or where there is no state of facts which make it, or the part charged to have been disobeyed, any other than utterly of no force, that any answer attacking the decree itself is allowed, -- it is no defense whatever that the decree is erroneous so long as not void.

*Id.*

¶34. A party to a suit and/or his attorney should not be allowed to violate an order and then collaterally attack it on appeal after they were sanctioned for the violation. The correct process would be to appeal the rendering of the order. However, Judge Griffith wrote that as a matter of practice in Mississippi where an order is void the violation of such an order is excusable.

¶35. In the case presently before the Court, the issue is one regarding the waiver of the medical privilege in order to allow ex parte contacts by the Defendants with any and all health care providers of Tinnon. The lower court entered an order allowing ex parte contacts. This practice was explicitly prohibited by this Court in *Scott v. Flynt*, 704 So.2d 998 (Miss. 1996). The order issued by the lower court as it applied to Tinnon when measured according to *Scott v. Flynt* was void. However, the lower court did not have the benefit of this Court's opinion in *Scott v. Flynt* at the time it entered its order. Because this case is to be reversed on other grounds, all further proceedings should be conducted in accordance with this Court's ruling in *Scott v. Flynt*.

¶36. The Court finds the main focus now becomes the letter written to Dr. Gary. We must answer the question, "Did the letter written to Dr. Gary by Tinnon's attorney violate the order?" Without a violation of the order there can be no imposition of sanctions under M.R.C.P. 37(b).

¶37. This Court's treatment of discovery sanctions is well established. Recently, the Court spoke to its view of the lower court imposing the "death penalty" by dismissing a lawsuit.

> The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. *White v. White*, 509 So. 2d 205, 207 (Miss.1987). The provisions for imposing sanctions are designed to give the court great latitude. *Id.* at 207. The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket. *Palmer v. Biloxi Regional Medical Center*, 564 So. 2d 1346, 1367 (Miss.1990). Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances. *Hapgood v. Biloxi Regional Medical Center*, 540 So. 2d 630, 634 (Miss.1989); *White*, 509 So. 2d at 209.
>
> Such dismissals by the trial court are reviewed under an abuse of discretion standard. *Palmer*, 564 So. 2d at 1368. When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss.1989). If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones which could have been made. *Id.* This Court will affirm a trial court's decision unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Cooper v. State Farm Fire & Cas. Co.*, 568 So. 2d 687, 692 (Miss.1990).

*Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997).

¶38. "([D]ismissal with prejudice typically is appropriate only if the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct." *Federal Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994) (quoting *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990)). The Court finds that the letter was not written in bad faith or in willful violation of the lower court's order, yet this Court understands and appreciates the trial judge's interpretation.

¶39. The letter was written by Breard in an attempt to protect his client's privacy rights as to the portion of the medical privilege that was not waived by Judge Terry's order. Also, the letter attempted to inform Dr. Gary as to what the order required, while reminding him that there was a portion of the physician-patient privilege that had not been waived.

¶40. Tinnon's counsel argues that at all times he intended to and did obey the order issued by the lower court even though he thought it was unsupported by law and violated his client's constitutional and legal right to privacy. Tinnon contends that the lower court order did waive the privilege as to the relevant information, but did not completely waive the privilege. He argues that the letter was merely an attempt to inform the doctor that the order was not a complete waiver of the physician-patient privilege. Also, Tinnon states that either side had the right to explain the order to the doctor. Finally, Tinnon asserts the letter contained language that was strikingly similar to some of the language used by this Court in *Scott v. Flynt*.

¶41. The Defendants respond that the letter was willful and intentional action that was a violation of the order under M.R.C.P. 37(b). The order stated that the disclosure of medical information was not to be limited by the plaintiff or his legal representative as to time, place, or method, and any attempt to so limit such disclosure would be a direct violation of the order. The Defendants contend that the letter was an attempt by the legal representative of Tinnon to limit disclosure by Dr. Gary.

¶42. In the letter Mr. Breard explained that when the order was read in conjunction with the doctor's physician-patient privilege it left him with several alternatives.

> You are therefore left with several choices. You can (1) attempt to, at your own risk, make a determination of what is relevant to the allegations on your own and risk violating the unwaived [sic] privilege; (2) you can require that any information conferences be done in the presence of plaintiff's counsel; and (3) you can request that any conferences be held by way of a formal deposition. Regardless, you may want to contact your own private counsel to make sure that you are not at risk of violating your legal and ethical responsibilities to Mr. Tinnon in any ex parte contact with the defense counsel, especially since you are not in the jurisdiction of this state.

¶43. The preamble of the Rules of Professional Conduct, as well as the rules themselves, speak to the lawyer's position as an advocate for his client. "As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." Miss. R. Prof. Conduct Preamble. "A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Miss. Rules of Professional Conduct Rule 1.3 cmt. (1997).

¶44. Tinnon's counsel asserts that his letter to Dr. Gary was simply an attempt by him to represent his client's interests. Tinnon states that Dr. Gary made a choice to not speak ex parte with the Defendants and could have just as easily chosen to meet with the Defendants. He contends that Dr. Gary could not be ordered to speak ex parte and Dr. Gary's choice to not speak should not infer wrongdoing on the part of Tinnon's counsel.

¶45. We hold that the letter did not violate the order issued by the lower court. Tinnon's attorney was simply attempting to clarify what the order required of Dr. Gary while protecting his client's interests. He enclosed a copy of the order and the complaint in the letter. He also suggested that Dr. Gary consult with his own attorney to determine an appropriate course of action in light of the order granting ex parte contacts. The letter concluded by thanking Dr. Gary and encouraging him to contact Tinnon's attorney if he had any questions. The Defendants argued at the lower court that the letter was not a direct threat to Dr. Gary but that it certainly had the effect of a threat.

¶46. Thus, the letter as written was not a violation of the lower court order allowing ex parte contact. The order stated that neither the plaintiff nor his legal representative should attempt to limit disclosure of relevant information as to time, place or method of disclosure. The letter did not attempt to do that which was explicitly prohibited. First, the letter was not an attempt to limit the disclosure as to time, place or method. It informed the doctor that he had several options in light of the lower court order. Tinnon's attorney could not demand the doctor do something or refrain from doing something.

¶47. Second, even if the letter was an attempt to limit the disclosure of information as to time, place, or method, it was not an attempt to limit the disclosure of relevant information. All through the letter the attorney specifically spoke to maintaining the physician-patient privilege as to matters that were not relevant to Tinnon's medical malpractice lawsuit. He wanted to make sure the doctor knew that the physician-patient privilege was not completely waived by the issuance of the order by the lower court. Tinnon's attorney was fearful that some information that had been learned by the doctor in his treatment of Tinnon would be disclosed that was not relevant to the present lawsuit. Although the Defendants argue that Dr. Gary had never treated Tinnon before and would only have relevant information, prior medical history could have been given by Tinnon to Dr. Gary in order to ensure a proper medical diagnosis. This is a privacy right of the patient that can not be taken for granted or impinged.

¶48. The letter was not an attempt by Tinnon's legal representative to limit the disclosure of relevant information by Dr. Gary as to time, place or method of disclosure. He was attempting to protect the privacy rights of his client by making sure the doctor knew the physician-patient privilege still applied to any non-relevant information the doctor possessed. Because the Court finds that there was no violation of the order, there can be no reason for the dismissal of Tinnon's medical malpractice claims against the Defendants. This case should be reversed and remanded with the original proceedings reinstated and all further proceedings conducted according to this Court's opinion in *Scott v. Flynt*.

### III. WHETHER M.R.E. 503(f) IS VIOLATIVE OF THE DEFENDANTS' CONSTITUTIONAL RIGHTS.

¶49. The appellee in *Scott v. Flynt* alleged that "[preventing] him from divulging medical information because of a protected privilege would amount to a violation of his due process rights, his right to

effective representation of counsel and a fair trial." *Scott*, 704 So.2d at 1007. However, the Court based its decision in *Scott* on statutory interpretation grounds and found it unnecessary to address the constitutional claims. *Id.* The Court stated that it "(...will not decide a constitutional question unless it is necessary to do so in order to decide the case.)" *Id.* (quoting*Kron v. Van Cleave*, 339 So. 2d 559, 563 (Miss. 1976)).

¶50. The Defendants write for forty-three pages in their brief arguing the constitutionality of M.R.E. 503(f). We do not address at length all of their arguments, as they are lengthy and without merit. The Court's decision in this case will be determined on grounds other than constitutional concerns and, accordingly, the Court will not address those issues for the same reasons it did not in *Scott*. *Id.*

¶51. At this time the constitutionality of M.R.E. 503(f) is not ripe for appeal. No proceedings in this case have been had in accordance with this Court's holding in *Scott v. Flynt*. On remand, the proceedings will be bound by that decision. If the case goes to trial and a judgment entered against the Defendants, the issue would then be ripe for appeal purposes should the Defendants desire an appeal at that time.

¶52. We only address the constitutionality issue now in order to promote judicial economy in our courts because it appears as though it may continue to be raised. The Defendants allege on appeal that M.R.E. 503(f) is unconstitutional. They allege that Tinnon is obstructing the exchange of information among his medical providers under the guise of privilege. The Defendants claim that this privilege has no legitimate purpose when those seeking the information are licensed professionals, operating under rules of ethics and professional conduct which independently protect against public release or disclosure of confidential medical information, regardless of legal relevancy. Judge Terry stated

> [i]f [a physician] is advanced as an expert he's going to be asked does he have an opinion based upon his experience, his education as to whether or not there is a causal relationship between X and Y. . . . If he hasn't got sense enough to understand what is relevant to the proceedings, that language, how is he going to understand whether or not there is a causal relationship?

¶53. This Court spoke directly to this in *Scott*, by adopting the holding in *Horner v. Rowan*, 153 F.R.D. 597 (S.D. Tex. 1994).

> The decision to waive the privilege as to unrelated matters belongs to the patient; yet, if ex parte interviews are permitted, it would be left to the physician to determine what information is subject to disclosure and what remains privileged. The doctor is not only unskilled in making that determination, any error in judgment could, in addition, expose the physician to liability arising from an improper disclosure. . . .

*Scott*, 704 So.2d at 1005 (quoting *Horner*, 153 F.R.D. at 601-02).

¶54. The Defendants argue that strict scrutiny should be applied because this Court has interpreted M.R.E. 503(f) to prohibit ex parte contacts. The Defendants claim this is a denial of equal protection, due process, and free speech. We disagree.

¶55. "[I]n not one instance has a court found that ex parte conferences were necessary in order to

permit defense counsel to obtain information that they were unable to obtain through the regular channels of discovery." *Petrillo v. Syntex Laboratories, Inc.*, 499 N.E.2d 952, 956 (Ill. App. Ct. 1986), cert. denied, 483 U.S. 1007 (1987). "([T]he fundamental holding that ex parte discussions between defense counsel and plaintiff's treating physician shall be conducted only through authorized methods of discovery has been overwhelmingly approved in subsequent. . .cases." *Best v. Taylor Machine Works*, 689 N.E. 2d 1057, 1098 (Ill. 1997) (quoting L. Bonaguro & M. Jochner, *The Petrillo Doctrine: A Review and Update*, 83 Ill. B.J. (6, 16 (1995)). "Since [p]ublic policy forbids 'that conduct which tends to harm an established and beneficial interest of society the existence of which is necessary for the good of the public,' the court held that 'modern public policy strongly favors the confidential and fiduciary relationship existing between a patient and his physician.'" *Best*, 689 N.E.2d at 1099 (quoting *Petrillo*, 499 N.E.2d at 957).

¶56. The Court holds that M.R.E. 503(f) does not deny the Defendants' equal protection, due process, or free speech rights. There are other avenues of discovery besides ex parte contacts. The Defendants are still able to conduct discovery according the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence. Any restrictions of the Defendants' rights are because the public policy favoring physician-patient privileges and a patient's right to privacy outweigh the Defendants' rights.

¶57. This issue is without merit. The case can be decided on other grounds without the Court delving into the constitutionality of M.R.E. 503(f). Also, this issue is not ripe for appellate consideration at this time. However, the Court has discussed this issue in order to promote judicial economy as it appears the issue will continually be raised by litigants. The public policy favoring physician-patient privileges and a patient's right to privacy outweigh the Defendants' rights. The Defendants may seek to obtain discovery from Dr. Gary through other avenues according to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence.

## CONCLUSION

¶58. The Court holds that the lower court erred by dismissing Tinnon's lawsuit against the Defendants, as the letter to Dr. Gary was not a violation of the lower court order. The constitutional question regarding M.R.E. 503(f) is not ripe for appeal, but, judicial economy requires that we address it because it appears that it will be continually raised until the Court reaches the issue. Tinnon's complaint against the Defendants should be reinstated and all further proceedings conducted in accordance with this Court's decision in *Scott v. Flynt*.

¶59. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., NOT PARTICIPATING.**