IRVING, J.,
for the Court.
¶ 1. Sarah Ratcliff sustained injuries when she fell at the Rainbow Casino in Vicksburg, Mississippi, and consequently sued Rainbow for her injuries. At the *764 completion of discovery, the court below granted Rainbow’s motion for summary judgment. Feeling aggrieved, Ratcliff appeals, arguing that (1) Mississippi should hold casinos to a higher standard of care than other businesses, (2) the stool she tripped over was inherently dangerous or, (3) in the alternative, Mississippi should adopt a requirement that all premises liability claims must go to a jury.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Ratcliff was gambling at the Rainbow Casino in Vicksburg on March 13, 2001, when she tripped over a stool[1] and fell, breaking her hip. Ratcliff was seventy years old at the time of the accident and had been sitting on the same stool for five or six hours, taking breaks only to cash in her tickets or to use the restroom. Rat-cliff consequently sued Rainbow Casino for damages, alleging that Rainbow was negligent in not providing a reasonably safe premises. After discovery, the court below granted Rainbow’s motion for summary judgment.
STANDARD OF REVIEW
¶ 4. We employ a de novo standard when reviewing a lower court’s grant of summary judgment. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶9) (Miss.2002). All evidence in the record will be viewed in a light most favorable to the party against whom summary judgment has been entered. Id. Summary judgment will only be affirmed where the non-moving party fails to present any genuine issue of material fact. Id. The burden of showing that there is no genuine issue of material fact rests on the moving party. Id.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) The standard of care owed by casinos

¶ 5. Ratcliff urges this Court to find that casinos should be held to a higher standard of care than other businesses. The current standard of care owed by casinos is “to keep the premises reasonably safe, and when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view.” McGovern v. Scarborough, 566 So.2d 1225, 1228 (Miss.1990). This standard applies not only to casinos, but to all business owners. Although numerous Mississippi cases have applied this standard to casinos,[2] Ratcliff urges this Court to adopt a new strict liability standard for casinos. Under this standard, a casino would be hable for any injury suffered by its patrons, regardless of fault.[3] Ratcliff believes casinos should be held to this higher standard because of the “physical and psychological manipulation of the casino environment.”
*765 ,¶ 6. We decline to apply a new standard of strict liability to casinos. Rat-cliff has provided no authority to support her argument that strict liability should be applied to casinos. No Mississippi case has ever applied strict liability to a casino. Ratcliff cites a passage from the Restatement Second of Torts that is not directly on point, t\yo dissenting opinions, and other cases that state only the current standard of care owed by casinos. None of these sources provide support for this Court to apply a standard of strict liability to casinos. Under Mississippi law, “failure to cite case law in support of an argument precludes this Court from considering the assignment of error on appeal.” Farm Services, Inc. v. Oktibbeha County Bd. of Supervisor 860 So.2d 804, 810(¶24) (Miss.2003) (citing Hewlett v. State, 607 So.2d 1097, 1107 (Miss.1992)). Therefore, Ratcliff has not presented a valid argument for this Court to review.
¶ 7. We do note, however, that even if the authorities cited by Ratcliff were assumed to be sufficient to overcome the aforementioned procedural bar, we would still decline to impose a standard of strict liability on casinos. Ratcliff argues that casinos are inherently different from other businesses, such as grocery stores, because it is the purpose of a casino to “seduce the invitee to get lost in time and space and to create the [sic] ‘magical effects’ and ‘dream-like state’.” However, Ratcliff fails to point out the examples that are more on point: bars, movie theaters, museums, musicals, nightclubs, amusement parks, state fairs, etc. All these businesses rely on being able to attract and keep customers entertained for hours. All these businesses employ flashy attractions designed to keep customers riveted. All do so for profit. According to Ratcliffs reasoning, all these businesses should therefore have a standard of strict liability imposed upon them. We see no reason to ignore established Mississippi premises liability law and impose a standard of strict liability on casinos and other-similar businesses.
(¾) Summary judgment and inherent danger of stools
¶ 8. Ratcliff also argues that summary judgment was improperly granted in her case because she presented a genuine issue of material fact regarding the inherent safety of the stools employed by Rainbow. We find this argument is without merit. The stools used by Rainbow were standard stools used not only by numerous casinos, but also by any number of other businesses across the country. Ratcliff claimed in her affidavit that the stools were dangerous in part because they did not have backs and that the other casinos she visited had backed stools. However, Ratcliff herself contradicted this statement in her deposition where she testified as follows:
Q. Do you always go to the Rainbow?
A. No. I sometimes go to Harrahs. [sic]
Q. Sometimes Harrahs. [sic] Does Har-rahs [sic] use the same type of stools Rainbow does?
Á. I never have looked at the stools down there. I just sat on them. They probably do.
Q. They look about the same?
A. Uh-huh. [Affirmative].
Ratcliff also offered no evidence to substantiate her claim that stools with backs are easier to occupy or have safer legs. No experts were deposed to support Rat-cliffs claim that backed stools are safer than backless stools. No evidence was presented as to the actual practices of casinos and other businesses and whether the style of stool that Ratcliff was sitting on is considered to be dangerous.
*766 ¶ 9. More than once Ratcliff alleges, but offered no proof, that Rainbow later replaced the style of stool over which she tripped. Ratcliff does not address the fact that even if she had proof of this, it would be inadmissible at trial under Mississippi Rule of Evidence 407, which bars evidence of subsequent remedial measures when offered to prove negligence. Such evidence is only admissible to prove other facts, such as control, ownership, or feasibility (none of which Ratcliff alleges as an issue). Therefore, we accord little weight to Ratcliffs bare assertion that Rainbow replaced its stools because the previous stools were dangerous.
¶ 10. Ratcliff also contends that her claim should have gone to a jury because “being carried out of the casino on a gurney after falling and breaking her right hip is conclusive proof that sufficient facts exist for a jury to determine that the casino had not met its obligation to keep its premises reasonably safe.” This statement is simply untrue. The mere presence of an injury is not conclusive proof that there are any facts from which a jury could conclude that a casino did not meet its obligation to maintain a reasonably safe premises. People slip and fall for many reasons — including their own negligence. The mere fact that an injury results from such a fall does not conclusively create evidence of negligence on the part of the business owner.
¶ 11. Several Mississippi cases are relevant to the issues raised in this case. In one case, a motion for directed verdict was affirmed where a plaintiff had tripped over a raised threshold in a doorway. McGovern v. Scarborough, 566 So.2d 1225, 1228 (Miss.1990). The court held: “it is impossible to envision this doorway as creating a danger of some kind, in some way different from thousands of like doorways .... If this Court were to hold a jury question was made on whether this doorway was not reasonably safe, we would have to say a jury question is made as to any doorway from the street which is not on the same level as the street.” Id. Similarly, in the case now before us, it is equally difficult to see how the stool in question created a danger different from thousands of similar stools in use across the country.
¶ 12. In another case, a plaintiff tripped and fell over a hand truck that the plaintiff knew was present but misjudged its actual location. This Court held that the defendant, Wal-Mart, should have been granted a directed verdict at the end of trial because “[t]he fact that Littleton misjudged the actual location of the ... hand truck is lamentable, yet hardly implies a breach of duty by Wal-Mart.... The danger was known to Littleton, and the presence of a hand truck is hardly unusual in a store like Wal-Mart....” Wal-Mart Stores, Inc. v. Littleton, 822 So.2d 1056, 1059(¶ 12) (Miss.Ct.App.2002). The presence of a stool is hardly unexpected in a casino; like the plaintiff in Littleton, Ratcliff knew that the stool was there and merely misjudged its actual location, which caused her to trip over it.
¶ 13. The record clearly established that Ratcliff tripped over either her own stool or her friend’s stool, which she sat next to all night. Ratcliff testified in her deposition that no Rainbow employees tampered with her stool and that the stool was where Ratcliff had herself placed it. She presented no evidence that the stool in question was dangerous, or that its location was dangerous, or that the lighting was dangerous, etc. Ratcliff has only presented evidence that there was a stool, which she tripped over. For all the reasons above, Ratcliff has failed to show any genuine issue of material fact regarding *767 the inherent safety ,of the stools used by Rainbow.

(8) Requirement that all premises negligence claims go to-a jury

¶ 14. Ratcliff urges this Court to create a procedural requirement whereby anytime negligence is asserted against the owner of an establishment (it is not clear whether Ratcliff intends this only for casinos or for all businesses), summary judgment is not available and the case must go to a jury, regardless of how preposterous the plaintiffs claims. There is no binding case law to support Ratcliffs contention that Mississippi should adopt this requirement, which is found only in Nevada state law. Ratcliff has presented no persuasive reason as to why Mississippi should abandon its common law requirements and the vehicle of summary judgment in premises liability cases. The potential dangers of adopting such a requirement are obvious. Summary judgment is available to help unclog already overcrowded court dockets by throwing out cases where a plaintiff is unable to show any genuine issue of material fact. If summary judgment were to be abolished as a remedy in premises liability cases, how long before it would no longer be available in products liability cases, contract cases, etc.? Removing such an established and useful procedural remedy would lead Mississippi courts down a path whose end is even more congested court dockets and frivolous lawsuits that juries would be forced to endure merely because the plaintiff alleges that his injuries occurred on business premises. We see no reason to create such a requirement and therefore decline to do so. The grant of summary judgment against Rat-cliff was proper.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY GRANTING SUMMARY JUDGMENT IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ, CONCUR.

. Neither Ratcliff nor Rainbow is sure which stool Ratcliff tripped over, but Ratcliff concedes that it was either her own stool or her friend's stool (whom she had been sitting next to the entire evening).

. E.g., Tucker v. Riverboat Corp., 905 So.2d 741, 744(¶ 10) (Miss.Ct.App.2004); Breaux v. Grand Casinos of Mississippi, Inc., 854 So.2d 1093, 1097(¶ 10) (Miss.Ct.App.2003); Breland v. Gulfside Casino Partnership, 736 So.2d 446, 448-49 (¶¶ 18-22) (Miss.Ct.App.1999).

.Ratcliff also makes the argument that the mere presence of a patron in a casino is inherently dangerous. Although Ratcliff treats this as a separate argument from her contention that casinos should be held to a standard of strict liability, we see no real distinction between the two. Therefore, our discussion of Ratcliff's strict liability theory also responds to her argument that the mere presence of a patron in a casino is inherently dangerous.