509 So.2d 205 (1987)
Charlie WHITE, Jr.
v.
Frankie Saralyn (Walton) WHITE.
No. 56360.
Supreme Court of Mississippi.
April 15, 1987.
As Modified on Denial of Rehearing June 3, 1987.
Isaac K. Byrd, Jr., James W. Craig, Bryd & Associates, Jackson, for appellant.
Harlon H. Varnado, Patricia R. Alexander, Jackson, for appellee.
Before WALKER, C.J., and DAN M. LEE and GRIFFIN, JJ.
DAN M. LEE, Justice, for the Court:
Appellant, Charlie White, Jr., appeals the divorce and alimony granted by the chancellor below in favor of Appellee, Mrs. Frankie Saralyn Walton White. Judgment of Divorce was granted November 27, 1984, on the grounds of habitual cruel and inhuman treatment pursuant to Miss. Code Ann. § 93-5-1 (1972). Appellant appeals assigning three errors made by the chancellor:
I. THE CHANCELLOR ERRED IN GRANTING APPELLEE'S MOTION TO DISMISS APPELLANT'S PLEADINGS, AND IN OVERRULING APPELLEE'S MOTION TO SET ASIDE ORDER DISMISSING APPELLANT'S PLEADINGS.
II. THE CHANCELLOR ERRED IN THAT THE ALIMONY, CHILD SUPPORT, THE AUTOMOBILE AWARDED AND THE ORDER REQUIRING APPELLANT TO PAY THE INTERNAL REVENUE SERVICE AND THE MISSISSIPPI STATE TAX COMMISSION WERE CLEARLY AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
III. THE CHANCELLOR ERRED IN AWARDING $5,000 IN ATTORNEY FEES, WHICH WERE EXCESSIVE AND CLEARLY UNSUPPORTED BY THE EVIDENCE.
*206 We reverse for the unwarranted imposition of the most severe of discovery sanctions.

FACTS
Appellant and Appellee were married on July 30, 1970. A child, Carlyle Creswell White, was born February 13, 1979.
Appellee filed her bill of divorce on December 18, 1981. Appellant answered and filed a similar complaint January 21, 1982, also seeking a divorce on grounds of habitual cruel and inhuman treatment.
The couple separated on October 30, 1981, and they have remained continuously separated. Appellant's lack of compliance with discovery requests and the propriety of the sanctions arising therefrom presents the major issue on appeal.
Discovery commenced and on July 8, 1982, Appellee filed a Request for Production of Documents. This request went unanswered and on October 14, 1982, the chancellor granted Frankie's motion to compel production. Counsel for Appellant was substituted on October 28, 1982. However, Appellant apparently did not comply with the chancellor's order, and on December 7, 1982, Appellant was held in contempt of court for failure to produce the documents.
On December 9, 1982, Appellant filed a response to the request for production of documents. However, it is not complete and Appellant acknowledges it is confusing because the answers are mismatched to the requests. But interrogatories were taken and a tox of records were tendered to counsel for Appellee which were rejected in that form.
Little else occurred until Appellee began a second round of discovery on May 20, 1984, by noticing her intent to depose Appellee, attaching a request for further production of documents to be made at the deposition.
Appellant did not appear to be deposed and did not produce the documents. The chancellor found Appellant in contempt on July 10, 1984. The chancellor's order stated Appellant could purge the contempt by paying $250 in attorney's fees, by paying $35 in stenographer's fee and by appearing for a deposition in Jackson on July 14 with the requested documents. Appellant did not appear to be deposed and did not produce the documents.
A second contempt order was entered August 9, 1984. The trial court ordered Appellant to pay $250 in attorney's fees and $15 court costs as well as fees remaining unpaid. Appellant was ordered to appear with the requested documents on August 10, 1984, to be deposed. This he did. Appellee apparently was satisfied with the substance of Appellant's belated discovery compliance. Appellee made no further discovery requests nor sought further to compel discovery.
However, on September 24, Appellee filed a motion to dismiss Appellant's pleadings for failure to comply with discovery requests and court orders. This motion was set for hearing on November 1, 1984.
In the interim, on October 5, 1984, Appellant was again held in contempt, but this order only related to his continued failure to pay accumulated attorney's fees.
On November 1, 1984, the chancellor granted Appellee's motion to dismiss Charlie's pleading as a sanction for Appellant's discovery violations. On November 19, 1984, Appellant moved the chancellor to set aside this order. Appellant sought this relief noting that he complied, ultimately, with discovery requests. This motion was overruled and Appellant's pleading was dismissed. The divorce was heard as uncontested on November 21, 1984 and the chancellor granted Appellee a divorce on grounds of habitual cruel and inhuman treatment. Most of the testimony focused on the parties' financial status. The chancellor awarded Appellee $600 per month alimony, $600 per month child support and $150,000 lump sum alimony. The chancellor awarded Appellee attorney fees of $5,000 to be paid by Appellant, along with the couple's automobiles, ordering appellant to pay joint indebtedness to CitiCorp of $19,000 plus interest, and further ordering appellant to pay the couples' 1981 Federal *207 and State income taxes, for which they had not yet reported.

DISCUSSION OF LEGAL ISSUES

I.

DID THE CHANCELLOR ERR IN GRANTING APPELLEE'S MOTION TO DISMISS APPELLANT'S PLEADING, AND IN OVERRULING APPELLANT'S MOTION TO SET ASIDE THE DISMISSAL OF APPELLANT'S PLEADINGS?
The parties do not appear to dispute that the decision to impose sanctions for discovery abuse is vested in the trial court's discretion. Kilpatrick v. Mississippi Baptist Medical Center, 461 So.2d 765 (Miss. 1984).
Our rule concerning sanctions is Rule 37, M.R.C.P., Failure to Make or Cooperate in Discovery: Sanctions. Of particular importance to the discussion here is Rule 37(b)(2), pertaining to failures to comply with court orders. There it is stated:
(2) Sanctions by Court in Which Action is Pending. If a party ... fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(A) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(B) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
(C) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

[emphasis added].

* * * * * *
Rule 37(d) also allows the court to make such orders as are just, including any action authorized under 37(b)(2)(A), (B) or (C), as a sanction for a party's failure to attend his own deposition.
Rule 37(e) provides the court where the action is pending with a residuary grant of authority to impose "such sanctions as may be just."
These provisions are intended to give the court great latitude in fashioning appropriate sanctions and this Court has given great deference to the exercise of this discretion.
However, this does not mean that the trial court's decision is beyond reproach. We have held on several occasions that a court abused its discretion in failing to impose sanctions or by imposing sanctions less severe than warranted. See Harris v. General Host Corp., 503 So.2d 795 (Miss. 1986); Wallace v. Employers Mut. Cas. Co., 443 So.2d 843 (Miss. 1983); Square D Co. v. Edwards, 419 So.2d 1327 (Miss. 1982); Huff v. Polk, 408 So.2d 1368 (Miss. 1982).
True, this Court until now has yet to find a sanction excessive, but we must remember the nature of sanction we deal with here.
In Kilpatrick, it is said:
If the failure to comply is because of inability to comply, rather than because of willfulness, bad faith, or any fault of the party, the action may not be dismissed, nor a default judgment given, and less severe sanctions are the most that can be invoked. This merely emphasizes the fact that Rules 37(b) and 37(d) call upon the court to "make such orders in regard to the failure as are just," and that justice requires that the most drastic sanctions be reserved for flagrant cases.
461 So.2d at 768.
This statement is no more than a reflection of the constitutional due process considerations outlined by the United States Supreme Court in Societe Internationale v. Rodgers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). See National Hockey *208 League v. Metro Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).
The necessary intent, if you will, may be evidenced by a party's failure to obey a court order, but this failure too, may be related to an inability to comply rather than sanctionable conduct.
Here the chancellor made no determination of willfulness or bad faith.
In the proper case willfulness or bad faith may be so clearly demonstrated that neither a particular finding (nor consideration of other factors we outline below) will be necessary to uphold the imposition of ultimate sanctions.[1] We believe those cases are rare, however.
We cannot say from this record that willfulness or bad faith is so clearly demonstrated that the sanction must be upheld on this ground alone.
There being no finding of willfulness or bad faith, we might assume that the facts support the decision of the chancellor. Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985). See Brown v. Williams, 504 So.2d 1188 (Miss. 1987). But in any event, willfulness or bad faith alone might not substantiate the imposition of ultimate sanctions. Willfulness or bad faith is a minimum requirement, but there are several other factors to consider. Our Rule 37(b)(2) is similar to Rule 37(b)(2), Fed.R. Civ.P., and of course federal decisions interpreting this rule are persuasive. See Brown v. Credit Center, Inc., 444 So.2d 358, 364 n. 1 (Miss. 1983). In this context we find helpful the decision of the Fifth Circuit Court of Appeals in Batson v. Neal Spelce Associates, Inc., 765 F.2d 511 (5th Cir.1985). The Court stated:
In determining whether a district court abused its discretion, our precedent has addressed a number of considerations. First, dismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith, and not from the inability to comply. National Hockey League, 427 U.S. at 640, 96 S.Ct. at 2779; see also Marshall v. Segona, 621 F.2d 763, 767, n. 8 (5th Cir.1980). Next, dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Marshall, 621 F.2d at 768. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders. Marshall, 621 F.2d at 768; Silas v. Sears, Roebuck & Co., 586 F.2d 382, 385 (5th Cir.1978).
Id. at 514.
Obviously, findings by the sanctioning court on these considerations would also be beneficial to this Court on review. Here no findings were made, and we find that the lack of prejudice and the availability of other sanctions warrants reversal.
Here discovery concluded after Appellant submitted himself to be deposed. Though at oral argument counsel for Appellee maintained that she was not completely satisfied with Appellant's compliance, she made no further move to compel discovery and the case proceeded to hearing. Appellant was deposed, and he produced documents as requested, on August 10, 1984. The motion to dismiss Appellant's pleadings followed six weeks later on September 24, 1984, and the hearing on Appellee's bill of divorce did not occur until November 21, 1984, more than three months after Appellant was deposed. In seeking dismissal of Appellant's pleadings, Appellee did not mention any particular discovery request as remaining unanswered. In our review *209 of the record we find that any slight variance between the documents requested and those received in no way prejudiced Appellee.
Obviously, belated compliance with court orders compelling discovery will not always absolve the sins that have gone before, and we do not mean to intimate that eleventh hour responses will avert proper dismissals. However here, compliance preceded the motion for dismissal by nearly six weeks, and preceded trial by more than three months in what was a relatively uncomplicated divorce. Where there is nothing to indicate whether the fault lies with the party or his counsel, we are hesitant to approve dismissal in similar situations.
In addition, other sanctions were available. The court could have ordered Appellant incarcerated at the time he appeared for the divorce hearing, or baring his appearance, conduct the divorce as uncontested at that point. The chancellor could have dismissed Appellant's cross-complaint of divorce while allowing him to continue to contest Appellee's complaint. The wisdom of such an alternative becomes apparent given the manifest injustice in the decree as entered.
The record is clear that the $150,000 lump sum alimony award is oppressive. There can be no doubt that the chancellor's order effectively denied Appellant an opportunity to prevent such an oppressive award. It no doubt extended the litigation between these parties, as Appellant would likely be entitled to equitable relief on grounds of impossibility. See Taylor v. Taylor, 348 So.2d 1341, 1343 (Miss. 1977). A court should be reluctant to impose the most severe sanction of dismissal where the goal of judicial economy and efficiency is not served. Cross v. General Motors Corp., 721 F.2d 1152, 1156 (8th Cir.1983), cert. denied, 466 U.S. 980, 104 S.Ct. 2364, 80 L.Ed.2d 836 (1984). Judicial economy is best served by not rendering impossible decrees, and that could have been avoided here.
In holding as we do today we are not unmindful of the deterrence factor embodied in our discovery rules (and implicated in our decisions) to insure against future discovery abuses. See National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781, 49 L.Ed.2d at 75. We do not intend to condone the flouting of court orders, nor do we suggest that compliance with discovery obligations be anything less than vigorous.
However, it has been said that dismissal for discovery violations is a "draconian" remedy or a "remedy of last resort," only to be applied in extreme circumstances. Batson, 765 F.2d at 515.
We only hold that extreme circumstances warranting dismissal did not exist in this case and the chancellor abused his discretion in dismissing the pleadings of Appellant, thereby effectively closing to him the courtroom door.
Because we reach this decision, we need not address the amount of alimony awarded, as this surely will be revised in light of Appellant's opportunity to contest the proceeding below.
However, we feel compelled to address the award of attorney's fees granted below, which Appellant also assigns as error.
The lower court awarded attorney's fees to Appellee in the amount of $5,000. The only testimony concerning the appropriateness of these fees was an estimate made by counsel for Appellee during her questioning. This exchange took place:
Q. (Mr. Varnado): We have been working on this case in excess of two years and I have not yet rendered you a bill because we have not completed it. I think about $5,000 would be a reasonable fee. Would you think I have put in that much time and do you think that would be reasonable?
A. Yes, I do.
This evidence is wholly insufficient to substantiate an award of attorney's fees. Bumgarner v. Bumgarner, 475 So.2d 455, 456 (Miss. 1985); McKee v. McKee, 418 So.2d 764 (Miss. 1982).
Finding that the chancellor erred in dismissing appellant Charlie White, Jr.'s pleadings and erred in awarding attorney *210 fees to Frankie Saralyn Walton White, the decree of divorce rendered in the Chancery Court of Hinds County is hereby set aside and this case reversed for reinstatement of the cause on the court docket.
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] We need not hold that the court where the action is pending must articulate a finding of the requisite willfulness, although the Sixth and Third Circuit Courts of Appeals have instituted similar requirements. See Patton v. Aerojet Ordinance Co., 765 F.2d 604, 608 (6th Cir.1985); Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 81 (3rd Cir.1982). Certainly, findings on the legal and factual determinations necessary to support imposition of the most severe sanctions aid this Court in determining whether discretion has been appropriately exercised and we trust the trial courts of this state will take note.