736 So.2d 446 (1999)
Marty BRELAND, Appellant,
v.
GULFSIDE CASINO PARTNERSHIP d/b/a Copa Casino, Appellee.
No. 97-CA-01402-COA.
Court of Appeals of Mississippi.
March 23, 1999.
Woodrow W. Pringle III, Gulfport, Attorney for Appellant.
Hugh D. Keating, Gulfport, Attorney for Appellee.
BEFORE McMILLIN, P.J., DIAZ, AND KING, JJ.
DIAZ, J., for the Court:
¶ 1. Marty Breland appeals the Harrison County Circuit Court's grant of summary judgment in favor of Gulfside Casino Partnership d/b/a Copa Casino. Finding error, we reverse and remand.

FACTS
¶ 2. On December 2, 1994, Marty Breland, Greg Breland, and Lynn Breland spent most of the day together on Greg's boat. Greg is Marty's brother and Lynn is Marty's sister-in-law. Later, the three entered the Copa Casino during the late evening hours of December 2, 1994, or the early morning hours of December 3, 1994. Marty and Greg played blackjack and Lynn watched. Between 5:00 a.m. and 8:30 a.m., Marty, Greg, and Lynn went to the Copa restaurant and had breakfast. Marty testified that before breakfast he had between six or seven alcoholic beverages. While eating breakfast, a rain storm occurred. The three stayed in the restaurant and drank coffee while waiting for the rain to lessen.
¶ 3. At approximately 9:00 a.m., Marty, Greg, and Lynn decided to leave. The Copa Casino is serviced for entrance and exit by an elevator and stairways on the north and south side of the elevator. The stairs are exposed to the elements except for a canopy covering the top of each section of the stairways. The stairs are *447 constructed of concrete with a metal strip along the leading edge of each stair. There is a handrail that runs the length of each section of the stairways.
¶ 4. As the three approached the elevators they noticed that the elevators were full. They decided to use the stairway to exit the casino. Marty testified in a deposition that the stairs were moist, but they were not wet. Lynn testified in a deposition that there was standing water on the stairs. Lynn stated that she remembered the three of them agreeing to hold onto the handrail because the stairs were so wet and it was still raining. Marty testified that he did not hold onto the handrail.
¶ 5. Charlie Levens, an employee of the Copa Casino, testified in a deposition that on December 3, 1994, he checked to see if safety cones, inscribed with "Caution Wet," were placed on the stairways. Between 6:00 a.m. and 7:00 a.m. two cones were in place. There was a safety cone on the landing in the middle of the stairway and at the bottom of the stairs. Lynn and Marty both testified in their deposition that they did not see the safety cones.
¶ 6. The three successfully negotiated the first flight of stairs and the landing mid-way on the stairs. After reaching the landing, Marty followed Greg and Lynn down the remaining stairs. As Marty walked down this section of stairs, he testified that he stepped on the wet unpainted metal strip on the stair and his feet came out from under him causing him to fall. Marty suffered injuries to his back, neck, hip, leg, and arm. Marty was transported by ambulance to Gulfport Memorial Hospital. Marty alleges that as a result of the fall, he underwent surgical procedures on May 26, 1995 and January 26, 1996. He also alleges that at the time of his fall he was employed by Cudd Pressure Control and he has not been able to return to this employment since the fall.
¶ 7. Marty filed a complaint in the Harrison County Circuit Court on December 7, 1995. Marty alleged, in pertinent part, that he was an invitee of the Copa Casino, that the Copa had created the condition causing Marty's fall, that the Copa failed to maintain it premises in a reasonably safe manner, that the Copa had notice of the dangerous condition of the stairs, that the Copa failed to warn Marty of the dangerous condition, and that as a result of the acts or omissions of the Copa, he was injured, incurred medical expenses, had lost wages, a loss of wage earning capacity, and he suffered physically, mentally, and emotionally.
¶ 8. The Copa Casino answered the complaint on January 10, 1996, admitting that Marty was an invitee of the casino; however, the Copa denied that there existed any dangerous condition, and if there was an unreasonably dangerous condition on the premises, Copa had no notice and therefore had no duty to remedy the condition or warn Marty. The Copa concluded that Marty had failed to use reasonable care for his own safety and welfare and that his own negligence was the proximate cause of his fall and injury.
¶ 9. On January 10, 1997, the Copa Casino filed its motion for summary judgment. Both parties filed briefs in support of their respective arguments. On October 16, 1997, Circuit Court Judge Kosta Vlahos issued his order granting Copa's motion for summary judgment and dismissing the cause of action. Marty Breland filed his notice of appeal on October 22, 1997.

DISCUSSION

I. STANDARD OF REVIEW
¶ 10. The Copa Casino and Breland state that at the hearing on Copa's motion for summary judgment, both parties stipulated that the evidence submitted to the court on the motion would be the same as that submitted at a trial of the case, and that the motion for summary judgment could be considered as a motion for a directed verdict or decided under the same standard applicable to a motion for directed verdict. Therefore, in the order, the circuit court judge stated, "the Court considered *448 the Motion of the Defendant by the standard that the trial court is bound to consider just the evidence which supports the non-movant's case, along with its favorable inferences."
¶ 11. On review of a decision on a motion for directed verdict, we review the circuit court's holding de novo. Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1281 (Miss. 1995). In deciding a motion for a directed verdict this Court must consider the evidence in the light most favorable to the non-moving party, and if by reasonable interpretation, it can support an inference of individual liability which the non-moving party seeks to prove, the motion must be denied. Turner v. Wilson, 620 So.2d 545, 550 (Miss.1993).
¶ 12. "The Court employs a de novo standard of review in reviewing a lower court's grant of [a] summary judgment motion.... This Court does not try issues on a Rule 56 motion, but only determines whether there are issues to be tried." Mississippi Gaming Comm'n v. Treasured Arts, Inc., 699 So.2d 936, 938 (Miss.1997) (citations omitted). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997).
¶ 13. We are unsure why the parties stipulated that the circuit court use a directed verdict standard. A reading of M.R.C.P. 50, Motions for Directed Verdict and for Judgment Notwithstanding the Verdict, makes it quite clear that a motion for directed verdict "does not apply to cases tried without a jury nor to those tried to the court with an advisory jury." M.R.C.P. 50 cmt. Accordingly, the correct criterion to employ in this instance was a summary judgment standard under M.R.C.P. 56.
¶ 14. The Copa Casino argues that even though there is different language used in the discussion of the two proceedings, they found great difficulty in discovering more than a semantical difference. The Copa submits that for all intents and purposes, there is no difference between standards for whether to grant summary judgment based under M.R.C.P. 56 or a directed verdict under M.R.C.P. 50.
¶ 15. Although we still do not know why the parties stipulated to the directed verdict standard, when the motion was really for summary judgment, we agree with the Copa Casino that the standards employed for a summary judgment and directed verdict are the same, just employed at different times during a proceeding. In fact Rule 56, in its comment, states,
[t]he directed verdict motion, which rests on the same theory as a Rule 56 motion, is made either after Plaintiff has presented his evidence at trial or after both parties have completed their evidence; it claims that there is no question of fact worthy of being sent to the jury and the moving party is entitled, as a matter of law, to have a judgment on the merits entered in his favor.
¶ 16. Therefore, we will review de novo the record on appeal. We are required to consider the evidence in the light most favorable to the party against whom the motion has been made, or the non-movant.

II. WHETHER THE CIRCUIT COURT ERRED WHEN IT GRANTED COPA CASINO'S MOTION FOR SUMMARY JUDGMENT.
¶ 17. Breland argues that the Copa provided means of entry and exit to its casino by a stairway covered by a canopy. The canopy did not prevent the stairway from getting wet and creating a hazardous condition. He was an invitee who was injured by a natural condition on a part of the business, the Copa, that was immediately adjacent and in fact was its major entrance and exit. Therefore, Breland maintains that a jury question existed as to the negligence of the Copa.
¶ 18. The operator of a business owes a duty to an invitee to exercise reasonable care "to keep the premises in a *449 reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of, in the exercise of reasonable care." Fulton v. Robinson Indus., 664 So.2d 170, 175 (Miss.1995) (citing Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293 (Miss.1988)). "The invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." Fulton, 664 So.2d at 175 (citing Tate v. Southern Jitney Jungle Co., 650 So.2d 1347, 1351 (Miss.1995)).
¶ 19. In Goodwin v. Derryberry Co., 553 So.2d 40, 41 (Miss.1989), the appellant, Goodwin, slipped and fell on ice covering the driveway of the appellee, Specialty Supply Co.'s, place of business, located in Greenville, Mississippi. The city of Greenville had been hit by a severe winter storm for three days preceding December 28, 1983. Id. On December 28, 1983, Goodwin went to Specialty Supply Co. and walked up an icy inclined pathway toward the store where customer traffic was expected to come. Id. Goodwin fell and fractured four ribs. Id. at 42.
¶ 20. The trial judge correctly instructed the jury on comparative negligence. Id. at 43. The jury returned a verdict for Goodwin; however, the trial judge granted Specialty Supply Co.'s motion for J.N.O.V. Id. at 42. The Mississippi Supreme Court reversed the trial judge's ruling. Id. at 44. The Court held "that it was a question for the jury as to whether or not the appellee exercised reasonable care to keep the premises in a reasonably safe condition." Id. at 43.
¶ 21. The Mississippi Supreme Court in Fulton opined that it was important to restate the law with regard to "slip and fall" cases in the aftermath of Tharp v. Bunge Corp., 641 So.2d 20 (Miss.1994), which abolished the open and obvious doctrine. The Court stated:
The entire body of slip and fall case law combined with this Court's latest pronouncements on the open and obvious doctrine can be summed up in these black letter conclusions:
(1) if an invitee is injured by a natural condition on a part of the business that is immediately adjacent to its major entrance and exit, then there is a jury question as to the openness and the obviousness of the danger.
(2) if an invitee is injured by a natural condition on a remote part of the business premises, and the danger was known and appreciated by the injured party, then there is no jury question.
(3) if an invitee is injured by an artificial/ man-made condition on an adjacent or internal part of the business premises, then there is a jury question as to the openness and obviousness of the danger.
Fulton, 664 So.2d at 175 (citations omitted).
¶ 22. The case at hand falls squarely under the first example cited above. Breland was an invitee of the Copa Casino, and the rain was a natural condition on the stairs which was a major entrance and exit to the casino. Therefore, following the precedent laid down by Fulton and its progeny, a jury question existed as to the openness and obviousness of the danger presented by the rain on a major exit of the Copa. We reverse and remand the circuit court's grant of summary judgment.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.