GRIFFIS, P.J.,
dissenting:
¶ 34. Justice John F. Onion Jr. of the Texas Court of Criminal Appeals once observed “that appellate judges watch from on high the legal battle fought below, and when the dust and smoke of the battle clears they come down out of the hills and shoot the wounded.”[2] With much respect for the majority and the trial court, my opinion today may do just that. But, it is not my intention. My intent is to see that the rules are fairly, properly, and consistently applied. I am concerned that this decision is not consistent with the Mississippi Rules of Civil Procedure and will create confusion among the bench and bar.
¶ 35. I respectfully dissent. I would reverse and remand for further proceedings consistent with this opinion.

I. Introduction

¶ 36. The judicial administration of civil claims is governed by the Mississippi Rules of Civil Procedure. These Rules give us the mechanism for civil claims to be brought, discovery to be obtained, and a resolution to be attained. Rule 1 provides “[tjhese rules govern procedure in the circuit courts ... in all suits of a civil nature .... These rules shall be construed to secure the just, speedy, and inexpensive determination of every action.” In this appeal, we must construe how the trial court applied these Rules. Appellate courts often recognize that, in criminal trials, a litigant “is entitled to a fair trial but not a perfect one, ‘for there are no perfect trials.’ ”[3] There are no perfect trials in *131 civil cases. Indeed, civil trials are governed by an extensive set of procedural rules. A fair trial follows the rules. A trial that fails to follow the rules certainly indicates the possibility of an unfair trial.
¶ 37. The Rules are designed for discovery to be completed, discovery disputes to be resolved, and pretrial motions to be filed well in advance of the trial date. As is often the case, there is a flurry of activity that is necessary immediately before a trial is ready to start. Here, a great deal of activity occurred just before trial, and the trial court ultimately determined that the plaintiff did not have the necessary expert witness to prove the medical-malpractice claim.[4] The trial court then followed the old adage that the train must depart the station at some point.[5]
¶ 38. Appellate review begins with the standard of review. The standard of review depends upon the final judgment entered. The majority is correct, if a summary judgment had been entered, we would review this matter with a de novo standard of review.
¶ 39. However, the trial court here did not enter a summary judgment. Instead, the trial court granted the defendant’s “motion for entry of final judgment.” There is no Mississippi case that instructs us as to the proper appellate review of such a final judgment. Hence, this is the reason that I am concerned that there will be confusion from this opinion because the majority has, without authority or intent, amended the Mississippi Rules of Civil Procedure to create another procedural method by which a final judgment may be entered without a trial on the merits.
¶ 40. The essential issue here is whether the trial judge abused his discretion when he excluded the plaintiffs’ expert on the morning of trial. Before I address that issue, I express my concern that it was error for the trial court to grant a “motion for final judgment,” as there is no such procedure in the Mississippi Rules of Civil Procedure.

II. Final Judgment

¶ 41. I do not agree with the majority that this Court may review this case as a *132 summary judgment. Rule 56 has specific requirements before a summary judgment may be granted, including notice. Uniform Rule of Circuit and County Court 4.03 also has certain requirements.[6] The Rules do not provide for a sua sponte motion for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure. I believe that this is a fundamental error that requires this Court to reverse and remand the case for further proceedings.
¶ 42. The majority cites Worthy v. McNair, 37 So.3d 609 (Miss.2010). This case is different than Worthy, and these differences matter. Vicki and Fred Worthy filed a medical-malpractice action against Dr. Robbye McNair. Id. at 611 (¶ 1). The trial began, with a jury selected, sworn, and empaneled. Id. at 612 (¶ 6). The Worthys offered two expert witnesses to testify by deposition, Dr. Bruce Halbridge and Dr. Carole Vogler. Id. at (¶ 5). The defendants filed[7] a Daubert[8] motion that challenged the reliability of Dr. Halbridge’s testimony about the deceased child’s cause of death. Id. at (¶ 6). The trial court considered the motion during trial and decided to exclude Dr. Halbridge’s testimony as unreliable under Mississippi Rule of Evidence 702 and Daubert. Worthy, 37 So.3d at 613
(¶ 10). The court then entered a “written order excluding Dr. Halbridge’s testimony as to causation, and also an order ‘granting summary judgment and directed verdict.’ ” Id. at (¶ 11).
¶ 43. The majority is correct that the Mississippi Supreme Court considered the grant of summary judgment, and rejected rationale to the contrary[9] from Hurst v. Southwest Mississippi Legal Services Corp., 610 So.2d 374, 384 (Miss.1992), overruled on other grounds by Rains v. Gardner, 731 So.2d 1192, 1196 (¶ 14) (Miss. 1999). Worthy, 37 So.3d at 617 (¶ 28). With no citation to any authority, the supreme court then held:
However, it cannot be said that conducting a full trial in the present matter would serve the judicial economy or the interests of the litigants. Because the plaintiffs had no expert to testify as to causation, they could not prove the necessary elements of their negligence suit. Conducting a trial on the issue with full knowledge that the defendant must prevail as a matter of law — regardless of what a jury may determine — does not serve any of the purposes set forth in Hurst. Therefore, although a jury had been duly empaneled, the trial court was *133 not in error for granting summary judgment in the present matter.
Id. at 617 (¶ 30).
¶ 44. This portion of the holding in Worthy has not been cited in any other case. It was not cited by Dr. Nunez as authority for the trial court here to grant the “motion for final judgment.” In Worthy, the trial court had considered one day of evidence. Id. at 612 (¶ 6). When the trial court considered the Daubert motion, the trial court had available the complete evidentiary deposition of Dr. Halbridge to consider whether his opinions were reliable and could pass the Daubert standard. Id. at 612-13 (¶¶7-8). That situation is not present here.
¶ 45. The trial of this case was set for November 30, 2009. The day before the trial was set to begin, Dr. Nunez filed a motion to exclude the testimony of the plaintiffs’ expert witness, Dr. Payne.[10] Dr. Nunez did not file a timely motion for summary judgment before the trial was scheduled to begin. On the morning of trial, Dr. Nunez’s counsel only asked that the motion to exclude be heard before the trial began. A jury had not been selected, sworn, or empaneled. After argument by the parties and an opportunity for the trial judge to consider his own research, the trial court granted Dr. Nunez’s motion to exclude the plaintiffs’ expert witness.
¶ 46. After court was adjourned, counsel for Dr. Nunez asked for court to reconvene. Before the trial court and opposing counsel, Dr. Nunez’s counsel stated that “Dr. Nunez would move the court ore ten-us for entry of a final judgment in his favor dismissing the plaintiffs complaint and any amendments thereto with prejudice.”
¶ 47. The trial judge entered the order granting the motion to exclude the plaintiffs’ expert witness on December 14, 2009, and entered the final judgment on March 14, 2011. The final judgment read:
At a hearing held on November 30, 2009, the Court granted the Motion of the Defendant, Gregory Nunez, M.D., to exclude the testimony of the Plaintiffs’ expert[,] John Payne, M.D. Following the Court’s ruling, counsel for Dr. Nunez made an ore tenus motion for entry of a final judgment in favor of Dr. Nunez, and the Court found that this is a medical malpractice case and that without an expert to testify as to causation, the Plaintiff cannot survive a directed verdict and that Dr. Nunez’s motion for final judgment was well taken and would be granted.
¶48. The Mississippi Rules of Civil Procedure provide for the pretrial termination of a case by a motion under Rules 12, 37, 41, 55, and 56. The Rules also provide for the termination of a case during or after trial by a motion under Rules 41, 50, 57, 58, 59, and 60. There is no procedural authority for a “motion for final judgment.” Worthy would only allow the trial court to enter a “summary judgment and directed verdict” if the trial judge excludes an expert witness’s testimony, under Daubert, during the trial. Worthy, 37 So.3d at 613 (¶ 11), 617 (¶ 30). Such was not the case here.
¶ 49. The majority also finds that Breland v. Gulfside Casino Partnership, 736 So.2d 446 (Miss.Ct.App.1999), addresses a similar issue to this case. It does not. *134 Here, there was no stipulation. In Bre-land, a motion for summary judgment was filed, and the “parties stipulated that the evidence submitted to the court on the motion would be the same as that submitted at a trial of the case[.]” Id. at 447 (¶ 10) (emphasis added). This Court was “unsure why the parties stipulated that the circuit court use a directed verdict standard.” Id. at 448 (¶ 13). “[A] motion for [a] directed verdict ‘does not apply to cases tried without a jury nor to those tried to the court with an advisory jury.’ ” Id. (quoting M.R.C.P. 50 cmt.). This Court found that “the correct criterion to employ in this instance was a summary judgment standard under [Rule] 56,” not the directed verdict standard the parties stipulated to. Breland, 736 So.2d at 448 (¶¶ 13, 15). Breland provides no relevant authority.
¶ 50. I am of the opinion that there is no authority for this Court to consider the trial court’s decision to grant the “motion for entry of final judgment” as a summary judgment. Accordingly, I respectfully disagree with and dissent from Section III of the majority opinion.

III. Exclusion of Expert Witness

¶ 51. Next, I consider the trial court’s decision to exclude the plaintiffs’ expert witness. I look at this issue based on the authority: (1) to exclude the expert witness and dismiss the case under Rule 37 as a discovery violation or (2) to exclude the expert witness as an evidentiary issue alone.
¶ 52. First, to dismiss a case for a discovery violation, the Mississippi Supreme Court has held that “the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.” Pierce v. Heritage Props., Inc., 688 So.2d 1385, 1388 (Miss.1997) (emphasis added).
¶ 53. Second, to exclude evidence as a consequence of a discovery violation, the supreme court has held that the “exclusion of] evidence for a transgression in discovery is an extreme measure.” Miss. Power & Light Co. v. Lumpkin, 725 So.2d 721, 733 (¶ 60) (Miss.1998).
¶ 54. . The bar is high to either exclude evidence or to dismiss a case for a discovery violation. The discretion used by the trial court must be viewed accordingly.

A. Dismissal of Action for Discovery Violation

¶ 55. The final judgment indicates that the trial court decided to grant Dr. Nunez’s “motion for entry of final judgment.” As discussed above, there is no authority to permit the pretrial “entry of a final judgment” in circumstances similar to this case, without a motion properly filed under Rule 37, 41, or 56.
¶ 56. Certainly, Dr. Nunez could have filed a Rule 56 motion for summary judgment along with the motion to exclude expert witness. Under Rule 56, the trial court would have then had the authority to dismiss the plaintiffs’ medical-malpractice claim because of the lack of an expert witness, i.e., the plaintiff could not then prove a necessary element of the claim. See Palmer v. Biloxi Reg’l Med. Ctr., Inc., 564 So.2d 1346, 1355 (Miss.1990). We would then review the decision to terminate the case under a de novo standard of review.
¶ 57. Another proper procedural vehicle would have been an involuntary dismissal under Mississippi Rule of Civil Procedure 41(b) for the plaintiffs’ failure to prosecute or to comply with procedural rules or any court order. However, there was no finding that the plaintiffs failed or refused to prosecute the claim.
¶ 58. The trial court’s decision to grant the “motion for entry of final judgment,” *135 which dismissed the plaintiffs’ claims, could be supported under Rule 87(b)(2)(C). Rule 87(b)(2) provides:
Sanctions by Court in Which Action Is Pending. If a party ... fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court .. may make such orders in regard to the failure as are just, and among others the following:
(A) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(B) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
(C) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
(D) in lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders.
In lieu of any of the foregoing orders or in addition[ ] thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney’s fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
(Emphasis added).
¶ 59. Because the only possible basis for the trial court to enter a final judgment was based on Rule 37(b)(2)(C), I am of the opinion that the question presented in this appeal is whether the trial court abused its discretion to dismiss this case due to a discovery violation.
¶ 60. The seminal case on dismissal as a sanction for a discovery violation under Rule 37(b)(2) is Pierce, 688 So.2d 1385. According to Pierce “the decision whether to impose sanctions for a discovery abuse is vested in the trial court’s discretion.” Id. at 1388 (citing White v. White, 509 So.2d 205, 207 (Miss.1987)). In Pierce, the trial court dismissed the case because Pierce lied during discovery and at the first trial. Id.
¶ 61. Pierce filed a personal injury lawsuit for damages she incurred when a ceiling fan in her apartment fell on her while she was in the bed. Id. at 1387. During discovery and the first trial, Pierce testified that she was alone in the bed when the fan fell. Id. Before the second trial, the defendants learned that Pierce was not alone in the bed that night. Id. at 1388. She had a companion with her when the fan fell. Id.
¶ 62. Pierce testified that she did not tell the defendants or the court about the companion, not to deceive the trial court, but because “she did not want her parents to know that she had a male companion in her apartment at night.” Id. Pierce argued that her false testimony was not a result of willfulness. Id. The trial court and the supreme court disagreed. Id. at 1390. Both courts rejected her argument and determined that she only admitted her untruthful discovery responses “when she realized that [the] defense knew the truth and confronted her with it.” Id.
¶ 63. The supreme court concluded that “[t]he other sanctions considered by the trial court would not achieve the deterrent value of the dismissal ... [A]ny other *136 sanction beside[s] dismissal would virtually allow the plaintiff to get away with lying under oath without a meaningful penalty.” Id. at 1391. The supreme court found the trial court was within its discretion and affirmed the dismissal. Id. at 1392.
¶ 64. To understand Pierce, we must also consider White, which was relied upon and cited in Pierce. White, 509 So.2d at 207. In White, the supreme court considered the dismissal of Mr. White’s complaint for divorce as a result of discovery violations. Id. at 207-10. Mr. White twice failed to appear at his deposition and produce documents. Id. at 206. The chancellor then granted Mrs. White’s motion to dismiss Mr. White’s complaint for divorce as a sanction for his discovery violations. Id. The court held:
The necessary intent, if you will, may be evidenced by a party’s failure to obey a court order, but this failure too, may be related to an inability to comply rather than sanctionable conduct.
Here the chancellor made no determination of willfulness or bad faith.
In the proper case[,] willfulness or bad faith may be so clearly demonstrated that neither a particular finding (nor consideration of other factors we outline below) will be necessary to uphold the imposition of ultimate sanctions. We believe those cases are rare, however. We cannot say from this record that willfulness or bad faith is so clearly demonstrated that the sanction must be upheld on this ground alone.
There being no finding of willfulness or bad faith, we might assume that the facts support the decision of the chancellor. But in any event, willfulness or bad faith alone might not substantiate the imposition of ultimate sanctions. Willfulness or bad faith is a minimum requirement, but there are several other factors to consider. Our Rule 37(b)(2) is similar to [Federal] Rule [of Civil Procedure] 37(b)(2) ... and of course federal decisions interpreting this rule are persuasive .... In this context we find helpful the decision of the Fifth Circuit Court of Appeals in Batson v. Neal Spelce Associates, Inc., 765 F.2d 511 (5th Cir.1985). The Court stated:
In determining whether a district court abused its discretion, our precedent has addressed a number of considerations. First, dismissal is authorized only when the failure to comply with the court’s order results from willfulness or bad faith, and, not from the inability to comply. Next, dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party’s preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party’s simple negligence is grounded in confusion or sincere misunderstanding of the court’s orders.
White, 509 So.2d at 208 (emphasis added and footnote and citations omitted).
¶ 65. Recently, in Conklin v. Boyd Gaming Corp., 75 So.3d 589, 592 (¶ 8) (Miss.Ct.App.2011), this Court considered a similar case and cited Pierce, White, and the four-factor Batson v. Neal Spelce Associates test. In Conklin, the Court considered whether the trial court’s decision to dismiss the complaint was proper. Conklin, 75 So.3d at 595-96 (¶¶ 18-26). Judge Ishee’s opinion stated that the supreme court, in Pierce, adopted the Fifth Circuit’s four-part test (from Batson) to determine whether a trial court had abused its discretion when it dismissed the *137 case with prejudice. Conklin, 75 So.3d at 595 (¶ 18). Here, there is no indication in the record that the trial court considered this test.[11]

1. Willfulness or Bad Faith

¶ 66. In Conklin, this Court determined that Conklin failed to comply with discovery due to willfulness or bad faith. Id. at (¶ 19). We opined that Conklin had “multiple opportunities during discovery to disclose his prior diagnosis of cellulitis, but he failed to do so each time.” Id. We also determined that Conklin knew about his leg problems and could have “easily re-treived” the medical records, “but he chose not to admit this during discovery.” Id.
¶ 67. Here, the trial court did not find that the plaintiffs’ discovery violation was wilful or in bad faith. The case was filed on September 8, 2006.[12] Almost three years elapsed without a trial setting or discovery motion being filed. On July 30, 2009, counsel for all parties executed and filed a notice of trial setting that set the trial for November 30, 2009. On September 2, 2009, approximately ninety days before trial, the trial court entered a scheduling order, which was “approved for entry” by all counsel. The scheduling order gave the plaintiffs until September 15, 2009, to designate experts and the defendants until October 30, 2009, to designate experts.[13] The scheduling order set a deadline for discovery of November 13, 2009, required all motions to be filed before November 20, and set a pretrial conference for November 23, 2009.
¶ 68. The plaintiffs designated Dr. Payne as their expert. Dr. Nunez’s counsel did not object to the timeliness of the designation. On September 25, 2009, Dr. Nunez’s counsel informed the plaintiffs’ counsel that the answers to the expert-witness interrogatory were insufficient and asked to depose Dr. Payne. On October 19, Dr. Nunez’s counsel again asked for a date for Dr. Payne’s deposition and filed a motion to compel answers to the expert-witness interrogatory.
¶ 69. On November 4, the plaintiffs supplemented their interrogatory response and filed a motion for a continuance. In the motion for continuance, the plaintiffs indicated as grounds for the continuance: their problem in replacing their expert witness, the designation of Dr. Nunez’s expert witness on October 30, the mediation set just before trial, and the outstanding document requests from other defendants.
¶ 70. On November 9, the trial court heard the motion to compel and the motion for continuance. Dr. Nunez’s counsel argued that the plaintiffs’ expert-witness designation was inadequate. The plaintiffs’ counsel argued that he had supplemented his designation and had been involved in a trial in federal court. The plaintiffs’ counsel stated that he would work with opposing counsel to set Dr. Payne’s deposition but that it may not be done before the discovery deadline. The court asked Dr. Nunez’s counsel if that would be “all right.” Dr. Nunez’s counsel responded, ‘Tes. So long as we can get it *138 in before trial.” The trial court then said, “Well, if we don’t get it in before trial, we’ll just have to continue the trial, or we’ll have other problems.” Dr. Nunez’s counsel stated they did not want a continuance and were “ready to go.”
¶ 71. For the consideration of this factor, I see no reason to consider the plaintiffs’ willfulness or bad faith prior to November 9. As of November 9, Dr. Nunez’s counsel had agreed that he would not have a problem with the plaintiffs’ expert witness if they could depose him “before trial.”
¶ 72. Nevertheless, at the November 9 hearing, the trial court asked the plaintiffs’ counsel if he could get ready for trial. The plaintiffs’ counsel answered that he could, but it would “be really hard to do it right between now and November 30.” The trial court responded, “I really don’t want to back off this trial date. Y’all see what you can do and let me know. I mean let’s see what you can do[.] ... [Ljet’s see what mediation does, and y’all may be able to resolve this thing at mediation tomorrow.”
¶ 73. On November 10, Dr. Nunez’s counsel noticed the deposition of Dr. Payne for Saturday, November 21, at noon. On November 20, plaintiffs’ counsel notified Dr. Nunez’s counsel that Dr. Payne was ill[14] and not available to appear for his deposition that was scheduled for November 21. The plaintiffs’ counsel also faxed his second supplementation of discovery responses.
¶ 74. On November 23, 2009, one week before trial, the parties were again before the trial court for a pretrial conference, with a mediation to immediately follow. The plaintiffs argued a motion to compel another defendant to produce documents and a Mississippi Rule of Civil Procedure 30(b)(6) deponent. The deposition was scheduled during the discovery period; but the deponent proffered was ill, and the deposition did not take place. The defendant’s attorney argued that the document request was overbroad but stated that he had turned over some documents the previous Friday. The court ordered some of the documents be produced to the court under seal, denied the motion to compel the Rule 30(b)(6) testimony, and instructed the attorney to produce some documents. All parties submitted a pretrial order, and one of the attorneys was to merge the documents into one pretrial order.
¶ 75. One month and one week before trial, the trial court was aware of the problems with the expert-witness discovery. The trial court used the impending trial date to get the parties to participate in mediation and advance the case toward settlement. The case did not settle.
¶ 76. Dr. Payne’s deposition did not take place as scheduled. At the hearing on the motion to exclude expert witness, there was no testimony or evidence that Dr. Payne’s illness did not prevent his attendance at the deposition. The plaintiffs’ counsel even offered to take his deposition on another date that Dr. Payne was available. Dr. Nunez’s counsel did not accept this offer.
¶ 77. I find nothing in the record to conclude that the plaintiffs failed to comply with discovery due to willfulness or bad faith. There was a steady march to trial that did not work out. However, I cannot find such willfulness or bad faith on the *139 part of the plaintiffs that would support dismissal of their claim. Certainly, more could have been done prior to September. However, both sides and the trial court are to blame in this failure, with possibly a little more blame on the shoulders of the plaintiffs.

2. Less Drastic Sanctions

¶ 78. In Conklin, Conklin argued that a “less harsh sanction” could have been applied. Conklin, 75 So.3d at 595 (¶ 20). This Court examined other cases. Id. at 595-96 (¶¶ 20-23). In Gilbert v. Ireland, 949 So.2d 784, 788-89 (¶ 10) (Miss.Ct.App. 2006), the trial court held that the plaintiff could not pursue claims in which she gave false testimony and failed to comply with discovery. The trial court only prevented the plaintiff from giving false testimony again. Id. However, this Court ruled that the trial court erred by not imposing sufficient sanctions. Id. This Court held that the appropriate sanction for the plaintiff’s conduct was dismissal of the action; therefore, this Court reversed and rendered. Id. at 792 (¶ 21).
¶ 79. In Conklin, the trial court found that “Conklin had failed to disclose relevant information regarding previous treatment of the leg at issue, and this omission prejudiced Boyd [Gaming Corp.] during its trial preparation.” Conklin, 75 So.3d at 591 (¶ 6). Based on the trial court’s finding that Conklin had committed perjury and fraud in discovery, the trial court dismissed Conklin’s complaint with prejudice. Id. at (¶¶ 4-6). As a result, this Court determined that the “deterrent value of Rule 37 could not be achieved by a less harsh sanction,” and we affirmed the dismissal. Conklin, 75 So.3d at 596 (¶ 23).
¶ 80. Here, there was no false testimony or perjury. The plaintiffs here, unlike the plaintiffs in Pierce, Gilbert, or Conklin, did nothing wrong. Further, here, the trial court was aware of the discovery problems almost a month before trial. The plaintiffs even asked for a continuance, and the trial court acknowledged that a continuance may be necessary. However, the trial judge marched the parties toward a trial and mediation, at least hoping for a pretrial resolution. In my opinion, there were less drastic sanctions available.

3. Prejudice to Defense During Trial Preparation

¶ 81. In Conklin, the trial court determined that the defendant was prejudiced in the preparation of his defense. Id. at (¶ 24). We concluded that “prejudice to the defendant during trial preparation is a consideration, not a requirement, in determining whether dismissal is appropriate.” Id.
¶ 82. Here, the trial court recognized that any prejudice to the defense during trial preparation could be resolved by a continuance. In fact, in the record, the trial court questioned the defense counsel about how much in legal fees and expenses they incurred as a result of the expert witness not appearing at the deposition, and counsel informed the court the amount was $30,000. Certainly, at least through the payment of fees and expenses incurred, the defense admitted that the trial court could have sanctioned a less drastic remedy that would not have caused Dr. Nunez to suffer any prejudice.
A Neglect Attributable to Attorney or Grounded in Confusion or Misunderstanding
¶ 83. In Conklin, there was “no indication or evidence that the discovery violations [we]re attributable to Conklin’s attorney.” Id. at (¶ 25).
¶ 84. Here, there is no neglect attributable to the plaintiffs. Indeed, based on the statements made by the plaintiffs’ attorneys, the “neglect” was attributable to a *140 medical condition of the expert witness. I cannot find any neglect by the plaintiffs or their attorney.

5. Conclusion on Dismissal of Action for Discovery Violation

¶ 85. I am of the opinion that it was reversible error to dismiss this case for the plaintiffs’ discovery violations. To reverse, the law requires that this Court must have a “definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon [the] weighing of relevant factors.” Pierce, 688 So.2d at 1388. I have such definite and firm conviction that the trial court was in error to dismiss this case as a discovery violation under Rule 37(b)(2)(C). As a result, I would reverse and remand this case for further proceedings.

B. Exclusion of Evidence only for Discovery Violation

¶ 86. If we view this case as only the exclusion of evidence, we must follow the supreme court’s directive that “excluding evidence for a transgression in discovery is an extreme measure.” Lumpkin, 725 So.2d at 733 (¶ 60). Then, we must apply a four-factor test, which is similar to the Pierce test.
¶ 87. In Lumpkin, the supreme court considered a four-factor test to determine whether it was an appropriate sanction for a trial court to exclude evidence as a consequence of a discovery violation. The court held that “[bjefore imposing such a sanction a trial court should consider [ (1) ] the explanation for the transgression, [ (2) ] the importance of the testimony, [ (3) ] the need for time to prepare to meet the testimony[,] and [ (4) ] the possibility of a continuance.” Id. at 733-34 (¶ 60). The court ruled:
The first consideration involves a determination whether the failure was deliberate, seriously negligent[,] or an excusable oversight. The second consideration involves an assessment of harm to the proponent of the testimony. The third and fourth considerations involve an assessment of the prejudice to the opponent of the evidence, the possibility of alternatives to cure that harm[,] and the effect on the orderly proceedings of the court.
Id. at 734 (¶ 60).

1.Explanation for the Transgression

¶ 88. The trial court and the majority recognize an explanation due to the plaintiffs’ previous expert witness’s conviction for tax fraud and incarceration. The trial court found a six-month gap where Boyd did not have an expert. The majority concludes that the trial court based its decision on this factor because the court was unaware of a clear-cut reason as to why a new expert had not been retained in a more timely manner.
¶ 89. I do not go back to the previous expert witness. The plaintiffs’ prior witness was not the problem here. If Dr. Payne’s deposition had been taken a week or so before the trial, by Dr. Nunez’s own counsel’s admission, that would have been acceptable. This factor weighs in favor of neither party.

2. Importance of the Testimony

¶ 90. As discussed above, Dr. Payne’s testimony was essential to the plaintiffs’ case. This factor weighs in favor of the plaintiffs.

3. The Need for Time to Prepare to Meet the Testimony

¶ 91. This appears to be the same as the prejudice factor in the Pierce test. When the plaintiffs’ counsel did not know if they would have dates for Dr. Payne’s deposition before the discovery deadline, Dr. Nunez’s counsel admitted that they only needed to take Dr. Payne’s deposition sometime before trial. This could have *141 occurred if Dr. Nunez’s counsel had taken the plaintiffs’ counsel’s offer for alternate dates. I do not see the threat of trial by ambush. There was no secret that the plaintiffs’ expert, whether the previously designated expert or Dr. Payne, would have testified that Dr. Nunez’s negligence led to the amputation of Boyd’s leg. This factor weighs in favor of the plaintiffs.
A The Possibility of a Continuance
¶ 92. Almost a month before the scheduled trial, the court was asked to continue the case. Although continuances are not favored and are subject to the trial judge’s discretion, it is difficult to allow the case to be dismissed or an essential witness’s testimony excluded when the problem was brought to the trial court’s attention approximately a month before the scheduled trial. The trial judge even articulated the possible need for a continuance: “Well, if we don’t get [the deposition] in before trial, we’ll just have to continue the trial....” This factor weighs in the plaintiffs’ favor.
¶ 93. Accordingly, I am of the opinion that it was reversible error to exclude Dr. Payne’s testimony. The law requires that this Court must have a “definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon [the] weighing of relevant factors.” Pierce, 688 So.2d at 1388. I have such a definite and firm conviction that the trial court was in error to exclude Dr. Payne’s testimony for the discovery violation present under the circumstances of this case. As a result, I would reverse and remand this case for further proceedings.

C. Conclusion

¶ 94. With the utmost respect for the majority, I must dissent. With the utmost respect for the trial court, I must find reversible error. I cannot get beyond the admonitions in Pierce and Lumpkin.
¶ 95. For these reasons, I would reverse and remand this case for further proceedings consistent with this opinion.
IRVING, P.J., AND ROBERTS, J„ JOIN THIS OPINION.

. Black v. State, 723 S.W.2d 674, 677 n. 1 (Tex.Crim.App.1986) (Onion, P.J., dissenting).

. Conners v. State, 92 So.3d 676, 688 (¶ 33) (Miss.2012) (quoting Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 36 *131 L.Ed.2d 208 (1973)); see also Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

. The majority opinion cites Worthy v. McNair, 37 So.3d 609 (Miss.2010), to say it is not always necessary to follow the Mississippi Rules of Civil Procedure. As discussed further below, Worthy considered the exclusion of evidence, on a Daubert motion, during trial. Here, we consider a pretrial decision to exclude evidence for a discovery violation. The distinction makes a difference.

. I certainly recognize the trial court’s authority to control the docket. However, such authority is not absolute and is subject to review. I have two concerns. First, the distance from the first stop (filing the complaint) to the second stop (the hearing/trial date) on November 30, 2009, was just over three years. The distance from the second train stop to the third stop (this appeal) has been just over three years. Before this decision is final, this case will have been pending longer post-judgment. The entire length of the train ride has been extended, not reduced, by the trial court’s decision. I am simply not convinced by the trial court's rationale.
Second, Boyd's attorney informed the court of problems with the trial going forward almost a month before the trial was scheduled to begin. Boyd’s attorney filed and the court heard a motion for continuance based on issues with the testimony from Boyd’s designated expert. Yet, the trial court did not rule on the continuance. Instead, as discussed in greater detail below, the trial court noted, "Well, if we don’t get it in before trial, we'll just have to continue the trial, or we'll have other problems.” To use this analogy further, the conductor (the trial judge) warned the passengers (the parties) that the train may have to take an unexpected stop (a continuance).

. Indeed, if we were to review a summary judgment, it would be beneficial to start with the Dr. Nunez's motion, followed by a review of the affidavits and other supporting eviden-tiary documents, the memorandum of authorities in support of the motion, and most importantly, the itemization of the facts relied upon and not genuinely disputed. See URCCC 4.03. This would be the record for our de novo review of a summary judgment. None of these required pleadings are in the record.

. The opinion does not state when the motion was filed. We do not know if it was a written pretrial motion or an ore tenus motion during trial.

. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. The court reasoned:
The Hurst Court stated, "[Cjommencement of trial closes the season for granting motions for summary judgment,” and went on to say, "Where trial has already begun, it is far preferable to allow the plaintiff to present his case in chief and then, if the plaintiff has failed to meet his burden of proof, direct a verdict in favor of the defendant.” Hurst, 610 So.2d at 384.
Worthy, 37 So.3d at 617 (¶ 28).

. The motion was served by email on November 29 and by hand delivery on the morning of November 30. The majority is correct that this notice was insufficient under Mississippi Rule of Civil Procedure 6(d). The majority is also correct that the trial court would have been required to deny the motion if the plaintiffs had objected to lack of notice. The plaintiffs failed to object and, thus, did not preserve this issue for appeal.

. The Batson factors are similar to the factors discussed by the court in Lumpkin, 725 So.2d at 733-34 (¶ 60).

. Based on Rule 4.04(A) of the Uniform Rules of Circuit and County Court, discovery in this case should have been completed in the early spring of 2007. As is often the case, the discovery deadline of Rule 4.04(A) was not followed, and the parties continued discovery as a result of their implied agreement to permit discovery after the Rule 4.04(A) deadline.

.This appears to be in violation of Rule 4.04(A) of the Uniform Rules of Circuit and County Court, which requires experts to be designated at least sixty days before trial.

. Dr. Payne submitted an affidavit that stated he had an "intestinal illness” that "rendered [him] unable to verbally communicate. As a result, [he] was physically unable to provide medical services to [his] patients and provide oral deposition on the date of the scheduled deposition. [His] illness was unexpected and beyond [his] control. [Dr. Payne] made [him]self available for deposition the week of November 22, 2009.”